IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE KAY MCVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No.   CIV-11-1028-HE |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

## PROCEDURAL HISTORY

Plaintiff's applications for DIB and SSI, alleging a disability beginning May 15, 2004, were denied on initial consideration and on reconsideration at the administrative level (TR. 25). An ALJ held a hearing *de novo* on June 22, 2010 (TR. 44-69). Plaintiff appeared with counsel and testified in support of the applications (TR. 44-65). A

vocational expert (VE) also testified at the request of the ALJ (TR. 66-69). The ALJ issued her decision on July 21, 2010, finding that Plaintiff was not disabled (TR. 25-39). The Appeals Council denied Plaintiff's request for review on July 21, 2011, and the decision of the ALJ became the final decision of the Commissioner (TR. 4-7).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. See *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§404.1520; 416.920. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 15, 2004, the alleged onset date (TR. 27). At step two, the ALJ concluded that Plaintiff has the following severe impairments:

> degenerative disc disease, fibromyalgia, chronic fatigue syndrome, restless leg syndrome, irritable bowel syndrome, migraines, depression, anxiety

(TR. 27). At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments meet or equal the limiting characteristics of any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 28).

At step four, the ALJ first formulated Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 20 CFR 416.967(a) except she is only occasionally able to climb, balance, stoop, kneel, crouch, and crawl. She is limited to superficial interaction with coworkers, supervisors, or the public and is limited to simple, routine tasks

(TR. 30). The ALJ then compared Plaintiff's RFC to the demands of her past relevant work (PRW) and determined that Plaintiff was not able to perform any of her PRW (TR. 37). At step five, the ALJ relied on the testimony of the VE in determining that Plaintiff could perform other jobs existing in significant numbers in the national economy including machine operator and assembly worker (TR. 38). Thus, at step five of the sequential

evaluation process the ALJ determined that Plaintiff was not disabled under the Act and therefore, not entitled to DIB or SSI (TR. 38-39).

## ISSUES PRESENTED

Plaintiff contends that the ALJ erred in weighing the medical opinions of her treating sources, resulting in an RFC that is not supported by substantial evidence; that the ALJ's unsupported RFC, upon which the ALJ based her hypothetical questions to the VE, resulted in an inaccurate decision at step five; and that the ALJ erred in her analysis of Plaintiff's credibility.

## ANALYSIS

### I. Weight Assigned to Medical Opinions

Plaintiff contends that the ALJ erred in failing to properly weigh the opinions of her treating sources, including those of a physician and a physician assistant (PA). The ALJ gave little weight to the opinions of these treating sources and great weight to the opinions of the medical consultants of the State Disability Determination Services, particularly the opinion of an examining consultant, Dr. Sidney Williams (TR. 35-36).

The Tenth Circuit Court of Appeals has long recognized the proper analysis and assignment of weight to be given to the opinions of treating sources. When considering the opinion of an "acceptable medical source"[1] such as the claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.

---

[1] "Acceptable medical sources" include: (1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists; (3) Licensed optometrists; (4) Licensed podiatrists; and (5) Qualified speech-language pathologists. *See* 20 CFR § 404.1513.

2003). The opinion of a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight.

Even if the opinion of a treating physician is not entitled to controlling weight, however, it is still entitled to deference. The ALJ must clearly state the weight the opinion is being given, even if it is being rejected. The ALJ must specify the reasons for the weight afforded the opinion, and her reasons must be closely tied to the factors specified in the regulations. *See Watkins*, 350 F.3d at 1300–01. Remand is required if the ALJ does not adequately support the weight she assigned to the opinion of an acceptable medical source. As the relevant ruling explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct inquiry. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (holding that while absence of objective testing provided basis for denying controlling weight to treating physician's opinion, "[t]he ALJ was not entitled,

5

however, to completely reject [it] on this basis"). This second inquiry is governed by its own set of factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Id*. at 1119 (quotation omitted). In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight she gave to the treating source's medical opinion and the reason for that weight." *Id.* (quotation omitted).

### A.     Weight Assigned to the Opinion of Dr. John Williams

In this case, Plaintiff's medical records are replete with documentation of the conditions the ALJ deemed to be serious impairments at step two of the sequential evaluation, two of which are chronic fatigue syndrome and fibromyalgia. Dr. John D. Williams, a specialist in internal medicine, was Plaintiff's treating physician from September 19, 2008, until at least May 26, 2010 (TR. 367). On September 22, 2008, Dr. Williams completed a form for the Oklahoma Department of Human Services identifying Plaintiff's medical impairments. Dr. Williams stated that Plaintiff's employment-related limitations included severe pain requiring pain medication that affects her ability to concentrate (TR. 422). He further noted that Plaintiff has a heart murmur, revealed by an echocardiogram, irritable bowel syndrome, and general, severe muscular tenderness

(TR. 422-423).  Dr. Williams stated that Plaintiff could not walk more than one-fourth of a block, could neither stand nor sit for longer than 10 minutes at a time, and could not lift more than 10 pounds occasionally (TR. 423).

On May 26, 2010, Dr. Williams completed a Multiple Impairment Questionnaire and wrote a letter containing his medical opinion of the limiting effects of Plaintiff's impairments (TR. 364-74). Dr. Williams' diagnoses of Plaintiff's medical conditions included fibromyalgia, vitamin D deficiency, chronic pain syndrome, chronic fatigue syndrome, TMJ syndrome, anxiety, irritable bowel syndrome, migraine headaches, hypoglycemia and depression (TR. 367).  These diagnoses were based on blood tests, a bone density test leading to a diagnosis of osteoporosis, muscle tenderness in 18 or more trigger points associated with fibromyalgia, and his observation of Plaintiff's obvious depression and anxiety (TR. 367).  Dr. Williams stated that Plaintiff could sit for a total of only two hours in an eight-hour workday and could stand or walk only two hours in an eight-hour workday (TR. 369). Dr. Williams stated that Plaintiff has the ability to lift and carry only five to ten pounds occasionally and that her ability to grasp objects, manipulate objects with her hands, and use her arms to lift overhead were all at least moderately limited (TR. 370-371).  In addition to her physical limitations, Plaintiff's anxiety and "mental cloudiness" would, Dr. Williams believed, make her incapable of tolerating even "low stress" in a work environment because normal to low stress "greatly exacerbate[s] [Plaintiff's] symptoms" (TR. 372).  Dr. Williams stated emphatically that Plaintiff "cannot work an 8 hour day" (TR. 372).  Additionally, Dr. Williams noted that

Plaintiff's chronic pain and fatigue impairs her immune system making her prone to infections (TR. 373).

The ALJ's justification for effectively rejecting (or, as the ALJ put it, "according little weight to") Dr. Williams' findings is critical to the validity of the ALJ's decision. The ALJ gave four reasons for rejecting Dr. Williams' September 19, 2008 opinion: the short length of time since Dr. Williams had begun treating Plaintiff; Dr. Williams' subsequent treatment records indicating Plaintiff was treated with medication and physical therapy which the ALJ characterized as "essentially routine and conservative in nature"; Plaintiff's reported "noncompliance with physical therapy"; and the alleged effectiveness of Lyrica in treating Plaintiff's pain (TR. 34). As to the second opinion, given after Dr. Williams had been treating Plaintiff for almost two years, the ALJ assigned "little weight" because Dr. Williams stated that Plaintiff suffered from "osteoporosis" instead of "osteopenia."[2] The ALJ also attempted to justify her *de facto* rejection of Dr. John Williams' opinion as inconsistent with the opinion of the consultative physician, Dr. Sidney Williams (TR. 35). Dr. Sidney Williams stated that Plaintiff tested positive for 18 fibromyalgia trigger points while Dr. John Williams stated that Plaintiff has "severe general muscular tenderness (>18 trigger points) (TR. 367.

The length of the professional relationship between a treating physician and a claimant is, of course, one of the factors an ALJ should consider in determining the

---

[2] "Osteopenia" and "osteoporosis" are both diseases characterized by loss of bone mass, as measured by a bone mineral density test resulting in a "T score." A T score of -1 to -2.4 denotes osteopenia while a T score of -2.5 or over denotes osteoporosis. *See Osteopenia: When You Have Weak Bones but Not Osteoporosis*. Harvard Health Letter (Oct. 2003) www.health.harvard.edu/newsweek/Osteopnia_When_you _have_weak_bones.htm (last visited on September 17, 2012). On October 6, 2008, Plaintiff's T score was -2.2, a score very close to the medically accepted T score for osteoporosis (TR. 449).

weight to give the opinion of a treating physician. But rejecting a medical opinion because the treatment for fibromyalgia has been "conservative," is not valid. There is no more aggressive medical treatment, such as surgery, for fibromyalgia. *See Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003) (lack of need for surgery is not a reason to discredit claimant; American College of Rheumatology does not recommend surgery for fibromyalgia). Moreover, Plaintiff testified that the side effects of Lyrica include weight gain, dizziness and confusion (TR. 62-63). Her testimony is supported by Dr. John Williams' statement that she suffers side effects from her medication including dizziness, fatigue and weight gain (TR. 371). The fact that Dr. Williams diagnosed "osteoporosis" rather than "osteopenia" is irrelevant to determining the weight to afford his second opinion. Plaintiff does not attribute her pain to either condition, and her T-score of -2.2, places her on the borderline of the two conditions. Likewise, Dr. Williams" reference to ".18 trigger points" is not a sufficient reason to reject either the diagnosis or limiting effects of Plaintiff's fibromyalgia. This diagnosis is supported by the report of Dr. Sidney Williams, the consultative physician, who also diagnosed Plaintiff with fibromyalgia (TR. 266). The Tenth Circuit has recognized that the diagnoses of chronic fatigue syndrome and fibromyalgia do not lend themselves to objective clinical findings. *See Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) ("[F]ibromyalgia [is] also known as fibrositis -- a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features.") (*citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

In sum, the ALJ's reasons for rejecting the treating physician opinions of Dr. John Williams are not legally sufficient. In fact, Dr. Williams' opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the medical evidence in the record as a whole.

### B.   Information from a Physician Assistant

The ALJ also considered the July 16, 2008, letter of Jay Wedel, PA-C, MPAS (TR. 36). Mr. Wedel, a physician assistant, was supervised by Dr. Mark Hall during the period throughout which he was treating Plaintiff (TR. 288-360). Mr. Wedel stated that Plaintiff has frequent fibromyalgia flair ups and fatigue which make it difficult for her to seek gainful employment (TR. 360).

The Agency has recognized the increasing importance of evidence from "other medical sources" such as physician assistants:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file

SSR 06-03P, 2006 WL 2329939, at *3 (Aug. 9, 2006). Nevertheless, as the ALJ observed, Mr. Wedel does not qualify as an "acceptable medical source." Under the regulations, "only 'acceptable medical sources' can give . . . medical opinions." *Id.* at 2 (*citing* 20 CFR 404.1527(a)(2) and 416.927(a)(2)). *See also Keyes-Zachary v. Astrue*,

___ F.3d ___, 2012 WL 4076114 at *4 (10th Cir. Sept. 18, 2010) (to be published) (ALJ was justified in accepting opinion of consultative acceptable medical source over evidence provided by a treating source who did not qualify as an acceptable medical source).

In this case, the ALJ considered Mr. Wedel's letter and even identified it as an "opinion" to which she gave "little weight" based on a notation in the medical records stating that Lyrica helped Plaintiff's pain, and a notation encouraging her to "be as active as possible" (TR. 36). Neither of these statements is necessarily inconsistent with Mr. Wedel's description of the severity of Plaintiff's symptoms, but the ALJ's decision to reject Mr. Wedel's statements as inconsistent with the one-time examining consultant does not constitute reversible error.

## II. Credibility Assessment

Plaintiff also challenges the ALJ's credibility assessment. In *Wilson v. Astrue*, the Tenth Circuit restated the familiar framework for the proper analysis of a claimant's evidence of pain or other symptoms, as first set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). A court first considers whether the claimant has established the existence of a pain-producing impairment by objective medical evidence. If so, then the court must consider whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations of pain. If so, the court must then consider all the objective and subjective evidence to determine whether the claimant's pain is, in fact, disabling. *See Wilson v. Astrue*, 602 F.3d at 1144 (quotation and citations omitted). With regard to a claimant's credibility, an ALJ should consider:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence

*Id.* at 1145 (quotations and citations omitted). An adverse credibility determination must be (1) "closely and affirmatively linked" to the evidence, and (2) based on evidence that is "substantial." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).

Following the familiar template apparently used by administrative law judges across the country, the ALJ formulated Plaintiff's RFC before analyzing her credibility:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment

(TR. 32). Plaintiff contends that the ALJ erred in comparing her subjective complaints of pain to the ALJ's own RFC rather than to medical evidence in the record. Plaintiff argues that the ALJ should have analyzed Plaintiff's credibility first, and then factored the credibility findings into the RFC formulation. Plaintiff relies on *Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012), in which the Seventh Circuit Court of Appeals criticized the use of the "boilerplate" language included in the "template" for decisions used by ALJ's across the country. In *Bjornson*, as in this case, the ALJ's error arose from use of the boilerplate language included in the template in determining the claimant's ability to work (RFC) *before* determining the credibility of her subjective complaints of pain. As the

Seventh Circuit noted, the ALJ's analysis runs afoul of Soc. Sec. Rul. 96-7p which requires an applicant's credibility to be considered in *determining* his or her ability to work. *Id.* at 646. *See also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). The Seventh Circuit included the following warning in its opinion: "The Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Bjornson*, 671 F.3d at 646.

Like the Seventh Circuit, the Tenth Circuit has condemned use of boilerplate language in the Agency's decisions. Where, however, the opinion otherwise demonstrates the administrative law judge linked his findings to substantial evidence of record, the Tenth Circuit has found no error. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis"); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (Where "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* [requiring the findings to be closely and affirmatively linked to substantial evidence] are satisfied.").

In this case, however, the ALJ did not attempt to link her credibility findings to evidence in the record. The ALJ cited Plaintiff's sporadic employment record and very limited daily activities as reasons for discounting Plaintiff's credibility. An ALJ may properly consider a claimant's poor work history as one factor in determining a claimant's credibility. *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995). But common sense dictates that a sporadic work history could also be attributable to the alleged disability for which the claimant is seeking benefits. The ALJ's credibility determination is, therefore, deficient, and remand is required.

### III.     Testimony of the VE

In the final assignment of error, Plaintiff contends that the VE's testimony was flawed because the ALJ's unsupported RFC findings served as the basis for hypothetical questions posed to the VE. The RFC formulation must be reconsidered on appeal because the ALJ erred in analyzing the opinion of a treating physician and Plaintiff's credibility. If the RFC is modified, the hypothetical questions to the VE will necessarily be affected. Therefore, this issue merits no further discussion in this Report and Recommendation.

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED** for further administrative proceedings.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **October 29, 2012**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on October 12, 2012.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE